**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **ANDY M. AGUILAR and KAROLINA S. AGUILAR,** | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Civil Action No. 3:25-cv-01066** |
| **v.** | ) | **Chief Judge Campbell/Frensley** |
| | ) | |
| **ALLY FINANCIAL INC., et al.,** | ) | |
| **Defendants.** | ) | |

**<u>REPORT AND RECOMMENDATION</u>**

Plaintiffs Andy M. Aguilar and Karolina S. Aguilar bring this *pro se* action under 15 U.S.C. § 1601, *et seq.*; 15 U.S.C. § 1691, *et seq.*; 47 U.S.C. § 227, *et seq.*; 15 U.S.C. § 1692, *et seq.*; and 18 U.S.C. § 1962, alleging violations of the Truth in Lending Act ("TILA"), the Equal Credit Opportunity Act ("ECOA"), the Telephone Consumer Protection Act ("TCPA"), the Fair Debt Collection Practices Act ("FDCPA"), and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), as well as violations of Tennessee state law, against Defendants Ally Financial Inc., Ally Bank (the "Ally Defendants"), and Sonic Automotive Inc. ("Sonic"). Docket No. 1.

The case is currently before the Court upon multiple Motions. Plaintiffs have filed a Motion to Stay Arbitration Proceedings (Docket No. 33), which Plaintiffs have "supplemented" (Docket Nos. 34, 41). Ally Defendants have filed a Motion to Dismiss (Docket No. 36), and separately, Sonic has filed a Motion to Dismiss (Docket No. 38). Plaintiffs have filed a Response (Docket No. 39) to Ally Defendants' Motion to Dismiss, and have filed a Response (Docket No. 42) to Sonic's Motion to Dismiss. Ally Defendants have filed a Reply (Docket No. 43) to Plaintiffs' Response to their Motion to Dismiss. Following this, Plaintiffs supplemented (Docket No. 44) their Responses to both Motions to Dismiss. Ms. Aguilar has filed a Motion to Vacate Arbitration Award. Docket No. 46. Ally Defendants have filed a Motion to Confirm Final Arbitration Award (Docket No. 47)

and a Response (Docket No. 48) to Plaintiff's Motion to Vacate Arbitration Award. Ms. Aguilar has filed a Response (Docket No. 49) to Ally Defendants' Motion to Confirm Final Arbitration Award. Ally Defendants have filed a Reply to Plaintiff's Response. Docket No. 50.

For the reasons stated below, the undersigned recommends Plaintiffs' Motion to Stay Arbitration Proceedings (Docket No. 33) and Motion to Vacate Arbitration Award (Docket No. 46) be **DENIED** and that the Arbitration Award be confirmed, Ally Defendants' Motion to Dismiss (Docket No. 36) be **DENIED** and Motion to Confirm Final Arbitration Award (Docket No. 47) be **DENIED AS MOOT**, and Sonic's Motion to Dismiss (Docket No. 38) be **GRANTED**.

## I. BACKGROUND[1]

Plaintiffs became caught in a "fraudulent vehicle financing scheme" when they purchased a 2018 Mercedes-Benz C300 from dealer Mercedes-Benz of Nashville on May 13, 2022. Docket No. 1, ¶1; Docket No. 1-2, p. 14. Though Mr. Aguilar obtained pre-approval through Capital One Auto Finance (Docket No. 1-2, p. 42-43), "Defendants steered Plaintiffs away from legitimate credit" and "pressured Plaintiff Karolina S. Aguilar into signing a Retail Installment Sales Contract" ('RISC') which named Defendant "Sonic Automotive d/b/a Mercedes-Benz of Nashville as 'seller-creditor[.]'" Docket No. 1, ¶2. The RISC was signed by Ms. Aguilar. Docket No. 1-2, p. 5. The terms of the RISC required Plaintiff Karolina S. Aguilar to finance the purchase of the C300 via monthly payments of $758.28 beginning on June 27, 2022, and continuing for a

[1] Except where noted, all facts are taken from the Complaint (Docket No. 1) and are accepted as true for the purpose of ruling on the Motions. Documents referred to or attached to the pleadings, and integral to a plaintiff's claims, may be considered without converting a motion to dismiss into one for summary judgment. *Commercial Money Center, Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). As such, Defendants' copies of the Arbitration Demand, Counterclaim, Interim Award, and Final Award have been considered and used to augment the record where noted. Supplementary information from Plaintiffs' Motion to Vacate Arbitration Award has also been used where noted.

75-month term. Docket No. 1-2, p. 2. Defendants "falsely" conditioned this financing on the purchase of add-ons which "inflated the transaction price and burdened Plaintiffs with products they neither needed nor freely chose." Docket No. 1, ¶3. Plaintiffs state that "[n]o Ally entity funded the RISC" and thus there was no "lawful assignment" transferring rights under the RISC to Ally Financial Inc. or Ally Bank. *Id.* at ¶4-5. Instead, Mercedes-Benz of Nashville, and by extension Sonic, are the only "named creditor[s]," so any transfer of rights to the Ally Defendants leads to "TILA liability." *Id.* at ¶4.

Mr. Aguilar "made all periodic payments . . . as instructed by the dealer" but the Ally Defendants "manufacture[d] a false delinquency," accused Ms. Aguilar of default, and "pursued enforcement" of the RISC against her. *Id.* at ¶5. Plaintiffs did not sign a contract with the Ally Defendants (*Id.* at ¶6) and report repeated harassment by Defendants in violation of the TCPA, the FDCPA, and the Tennessee Debt Collection Act. *Id.* at ¶7. Plaintiffs' former legal counsel then "mistakenly initiated arbitration before the American Arbitration Association" ("AAA") against Ally Financial Inc. on July 24, 2024, where Ally Financial Inc. filed a counterclaim seeking to enforce the RISC and repossess the vehicle. Docket No. 1, ¶8; Docket No. 1-2, p. 27. Defendants acted inconsistently with arbitration (Docket No. 1, ¶9) and captured Plaintiffs in a "systematic captive-financing funnel designed to suppress outside lenders, misrepresent creditor identity, and enforce sham obligations through repossession and arbitration gamesmanship." *Id.* at ¶10.

Attached to Plaintiffs' Complaint is Plaintiffs' "Opposition to Final Award and Request for Reconsideration," submitted in response to AAA Arbitrator L. Wearen Hughes' proceedings and decision (the "Interim Award") on April 16, 2025. Docket No. 1-2, p. 65. Plaintiffs' document states:

> The Interim Award issued on April 16, 2025, by the Arbitrator found in favor of Ally Financial, Inc., granting them the repossession of the 2018 Mercedes-Benz C-

> Class and the application of the vehicle's sale proceeds to the balance of Claimant's account. The Arbitrator also dismissed the Claimant's claims of violations under the Tennessee Consumer Protection Act (TCPA), invasion of privacy, and trespass to chattels.

*Id.* (citation modified).

In their Response in Opposition to Plaintiffs' Motion to Vacate, Defendants included Arbitrator Hughes' actual statement:

> [T]he proof did not establish by a preponderance of the evidence that Respondent's contacts with Claimant or her husband, or its applications of payments, were improper or that any actions by Respondent justify relief on Claimant's claims. Nor did it establish damages of a nature or quantifiable amount that would merit an award based on those claims. In summary, Claimant did not carry her burden to prove liability or recoverable damages on her claims. Accordingly, Claimant's claims are DENIED.

Docket No. 48, p. 4. The Arbitrator then found that Ms. Aguilar had "breached her payment obligations under the RISC" and awarded Ally Financial Inc. possession of the vehicle. *Id.*

In their Motion to Vacate Arbitration Award, Plaintiffs recount that after issuing the Interim Award, Arbitrator Hughes "ordered Respondent to amend its counterclaim to substitute Ally Bank [for Ally Financial Inc.]" and "ordered briefing and a hearing to determine which entity provided financing and which entity, if any, possessed enforcement rights under the RISC." Docket No. 46, p. 3. Though "Respondent filed an Amended Counterclaim identifying Ally Bank as the proper party," the "scheduled hearing on entity authority did not occur." *Id.* Instead, Arbitrator Hughes recused himself from the case on September 8, 2025. Docket No. 48, p. 4. On October 29, 2025, AAA appointed Ellen L. Koblitz "to serve as arbitrator for the purpose of concluding the Arbitration and issuing a final award. *Id.* Plaintiffs brought the present Complaint and accompanying Motions while the Interim Award was still pending. Docket No. 1. Plaintiffs maintain that "[t]he successor arbitrator thereafter issued a Final Award on February 11, 2026" in favor of Ally Financial Inc., leaving the "real-party-in-interest question [] formally reopened and

never adjudicated." Docket No. 46, p. 3 (citation modified).

## II. LAW AND ANALYSIS

### A. Motions to Dismiss Under Fed. R. Civ. P. 12(b)(6)

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). The Supreme Court has clarified the *Twombly* standard, stating that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that pleads facts "'merely consistent with' defendant's liability . . . 'stops short of the line between possibility and plausibility' of 'entitlement to relief.'" *Id.*, quoting *Twombly*, 550 U.S. at 557 (internal brackets omitted).

When ruling on a defendant's motion to dismiss, the court must "construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac*, 41 F. 3d 1061, 1064 (6th Cir. 1994). The court should allow "a well-pleaded complaint [to] proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly*, 550 U.S. at 556. But a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Id.* at 555. "'[A] legal conclusion couched as a factual allegation' need not be accepted as true on a motion to dismiss." *Fritz v. Charter Twp. of Comstock*, 592 F. 3d 718, 722 (6th Cir. 2010) (citation omitted). Mere recitation of the elements of a cause of action or an "unadorned, the-defendant-unlawfully-harmed-me accusation" will not do. *Iqbal*, 556 U.S. at 678, *citing Twombly*, 550 U.S. at 555. The

court must "accept as true all non-conclusory allegations in the complaint . . . ." *Delay v. Rosenthal Collins Grp., LLC*, 585 F. 3d 1003, 1005 (6th Cir. 2009). But the Court does not have to accept unsupported legal conclusions. *Iqbal*, 556 U.S. at 678. Further, a document referred to or attached to the pleadings, and integral to plaintiff's claims, may be considered without converting a motion to dismiss into one for summary judgment. *Commercial Money Center, Inc. v. Illinois Union Ins. Co.*, 508 F. 3d 327, 336 (6th Cir. 2007).

"Pro se complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." *Williams v. Curtin*, 631 F. 3d 380, 383 (6th Cir. 2011) (internal quotation marks and citation omitted). Pro se litigants, however, are not exempt from the requirements of Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F. 2d 591, 594 (6th Cir. 1989). The Court is not required to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life. Ins. Co.*, 518 F. 2d 1167, 1169 (6th Cir. 1975); *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("a court cannot create a claim which [a plaintiff] has not spelled out in his pleading") (internal quotation marks and citation omitted); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"). To demand otherwise would require the "courts to explore exhaustively all potential claims of a pro se plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F. 2d 1274, 1278 (4th Cir. 1985); *see also Roberts v. City of Lancaster Code Enforcement*, No. 2:16-cv-00317, 2017 WL 1163859, 2017 U.S. Dist. LEXIS 46767, at *11 (S.D. Ohio Mar. 29, 2017) ("Even under the more liberal standard for pro se pleadings, this Court is not required to entertain allegations that

defy comprehension") (internal quotation marks and citation omitted).

### B. Arbitration

Though the Full Faith and Credit Act requires federal courts to give state court "judicial proceedings" the same preclusive effect those proceedings would receive in courts of the same state, "[a]rbitration is not a 'judicial proceeding' and, therefore, § 1738 does not apply to arbitration awards." *See* 28 U.S.C. § 1738; *W.J. O'Neil Co. v. Shepley et al.*, 765 F. 3d 625, 629-30 (6th Cir. 2014) (quoting *McDonald v. City of West Branch, Mich.*, 466 U.S. 284 (1984)). Federal courts are thus not required by statute to give res judicata or collateral-estoppel effect to an unappealed arbitration award; absent evidence that the arbitration award was confirmed or otherwise reviewed by a Tennessee court, the Full Faith and Credit Act does not require this Court to consult Tennessee preclusion law. *See W.J. O'Neil Co.*, 765 F. 3d at 629. Additionally, unless the arbitration agreement explicitly allows interlocutory judicial review of arbitration proceedings, only the final award is reviewable by the Court. *See Savers Property and Cas. Ins. Co. v. National Union Fire Ins. Co. of Pittsburg, PA*, 748 F. 3d 708, 716-22 (6th Cir. 2014).

As Judge Newman explains:

> As a matter of policy, "Congress enacted the FAA to replace judicial indisposition to arbitration with a national policy favoring it and placing arbitration agreements on equal footing with all other contracts." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008) (cleaned up). The "liberal policy favoring arbitration" requires the Court to honor and enforce arbitration agreements just like any other contract. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011).
>
> "[R]eview of an arbitration award 'is one of the narrowest standards of judicial review in all of American jurisprudence.'" *Barrick Enters.*, 496 F. App'x at 616 (first quoting *Way Bakery v. Truck Drivers Loc. No. 164*, 363 F. 3d 590, 593 (6th Cir. 2004); and then citing *Federated Dep't Stores, Inc. v. J.V.B. Indus., Inc.*, 894 F.2d 862, 866 (6th Cir. 1990)). If an "arbitrator's award draws its essence from the agreement and is not merely the arbitrator's own brand of justice, the award is legitimate." *Id.* (cleaned up) (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36, 108 S. Ct. 364, 98 L.Ed.2d 286 (1987)). If the Court can find

> "any line of argument that is legally plausible and supports the award[,] then it must be confirmed." *Merrill Lynch, Pierce, Fenner & Smith v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995).
>
> Section 10(a) of the FAA permits a court to vacate an arbitration award only if: (1) the award was procured by fraud, corruption, or other means; (2) the arbitrator was evidently partial or corrupt; (3) the arbitrator was guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy, or of any other misbehavior that prejudiced the parties' rights; or (4) the arbitrator exceeded his/her powers, or so imperfectly executed them that a final, mutual, and definite award was not made. 9 U.S.C. §§ 10 (a)(1)-(4).

*Hale v. Morgan Stanley*, 571 F. Supp. 3d 872, 879 (S.D. Ohio 2021), *aff'd sub nom. Hale v. Morgan Stanley Smith Barney LLC*, No. 21-4184, 2023 WL 2972572, 2023 U.S. App. LEXIS 9121 (6th Cir. Apr. 17, 2023) (citation modified).

Additionally:

> "Arbitrators are not required to explain their decisions," so when we evaluate manifest disregard for the law, a pithy explanation alone is not grounds for vacatur. *Dawahare*, 210 F.3d at 669. *See United Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 598, 80 S. Ct. 1358, 4 L.Ed.2d 1424 (1960); *Questar Cap. Corp.*, 909 F. Supp. 2d at 821–22. Likewise, if the arbitrator chooses not to explain, then "it is all but impossible to determine whether [the arbitrator] acted with manifest disregard for the law" in their decision. *Dawahare*, 210 F.3d at 669 (citing *Jaros*, 70 F.3d at 421). Accordingly, the Court will not overturn an award unless there is a "legal error ... evident without scrutiny of intermediate mental indicia." *Elec. Data Sys. Corp. v. Donelson*, 473 F.3d 684, 692 (6th Cir. 2007) (quoting *Detroit Auto. Inter-Ins. Exch. v. Gavin*, 416 Mich. 407, 331 N.W.2d 418, 429 (1982)).

*Id.* at 883 (citation modified).

Under the Federal Arbitration Act ("FAA"), a party seeking to confirm an arbitration award in the Sixth Circuit must demonstrate an independent basis for subject-matter jurisdiction. *See Ford v. Hamilton Investments, Inc.*, 29 F. 3d 255, 257 (6th Cir. 1994). Section 10 of the FAA, 9 U.S.C. § 10, provides that in any of the cases described in that section, "the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration." However, this section of the Arbitration Act does not

constitute a grant of subject matter jurisdiction. *See Ford*, 29 F. 3d at 257-58; *Garrett v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F. 3d 882, 884 (9th Cir.1993); *Harry Hoffman Printing, Inc. v. Graphic Communications, Int'l Union, Local 261*, 912 F. 2d 608, 611 (2d Cir.1990). The Sixth Circuit has ruled it is "equally clear that § 9 of the Act does not create subject matter jurisdiction." *See Ford*, 29 F. 3d at 258; *Pacific Reinsurance Management Corp. v. Ohio Reinsurance Corp.,* 935 F. 2d 1019, 1021 (9th Cir.1991); *General Atomic Co. v. United Nuclear Corp.,* 655 F. 2d 968, 969 (9th Cir.1981), *cert. denied,* 455 U.S. 948, 102 S. Ct. 1449, 71 L.Ed.2d 662 (1982).

Finally:

> "A court's denial of a motion to vacate an award is often treated as equivalent to an order confirming an award." *Milan Express Co., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 672 F. App'x at 553, 556 (6th Cir. 2016) (citing *Gen. Elec. Co.*, 426 F. Supp. 2d at 591–95). *See also, e.g.*, *Hale v. Morgan Stanley Smith Barney LLC*, 982 F.3d 996, 999 (6th Cir. 2020) (recognizing that "there is no meaningful difference between" a motion to confirm and motion to vacate); *Dodson Int'l Parts, Inc. v. Williams Int'l Co. LLC*, 12 F.4th 1212, 1228 (10th Cir. 2021) ("[W]hen a court denies a motion to vacate an arbitration award, the court's judgment has the effect of collateral estoppel; the parties cannot relitigate the validity of the award"). Therefore, an order denying a motion to vacate, in effect, confirms the underlying arbitration award. *See Dodson Int'l Parts*, 12 F.4th at 1229; *Yasuda Fire & Marine Ins. Co. of Eur., Ltd. v. Cont'l Cas. Co.*, 37 F.3d 345, 347 n.4 (7th Cir. 1994); *Urban Assocs., Inc. v. Standex Elecs., Inc.*, No. 04-CV-40059, 2012 WL 12930958, at *2, 2012 U.S. Dist. LEXIS 208174 (E.D. Mich. Aug. 20, 2012) ("Accordingly, the Court's denial of Plaintiff's motion to vacate 'was in effect a judgment confirming the award'" (quoting *Gen. Elec. Co.*, 426 F. Supp. 2d at 593)). Likewise, "confirmation of a valid arbitration award 'is a summary proceeding and the court must confirm the award where [it] is not vacated, modified, or corrected.'" *Sound Inpatient Physicians, Inc. v. Carr*, No. 20-6440, 2021 WL 3399642, at *5, 2021 U.S. App. LEXIS 23148 (6th Cir. Aug. 4, 2021) (quoting *Wachovia Sec.*, 125 F. App'x at 676).

*Hale*, 571 F. Supp. 3d at 886–87 (citation modified).

**C. The Case at Bar**

Because an independent source of subject-matter jurisdiction is required for the Court to

rule on the parties' Motions to vacate or confirm the arbitration award, the Court's analysis will begin with the claims alleging violations of federal law. *See Ford*, 29 F. 3d at 257. If any survive Defendants' Motion to Dismiss, Federal Question Jurisdiction conferred under 28 U.S.C. § 1331 enables the Court to review the motions regarding the arbitration award.

**1. TILA**

In Count I of their Complaint, Plaintiffs allege Defendants Ally Financial and Sonic Automotive violated the TILA, 15 U.S.C. § 1601 *et seq.*, stating:

> Primary theory, Failure to clearly identify the true creditor. The Retail Installment Sales Contract ("RISC") lists only Sonic Automotive d/b/a Mercedes-Benz of Nashville as the "seller-creditor." No Ally entity appears on the fact of the contract. Defendants failed to identify the true creditor clearly and conspicuously, in violation of 15 U.S.C. §1638(a) and Regulation Z, 12 C.F.R. §§1026.17-18. Plaintiffs were misled into believing Ally was the lender, when in fact no Ally entity funded or owned the contract. *Defendants further concealed that the transaction was swept into a wholesale collateral pool under a cross-collateral and guaranty agreement*, a structural arrangement never disclosed to Plaintiffs. This concealment further violated TILA's mandate of meaningful disclosure of the true creditor **(See Exhibit D)**.
>
> Alternative theories, Concealment of assignment and misleading structure. Defendants concealed any alleged assignment of the RISC to Ally, misrepresented the funding of the transaction while wrongfully applying Plaintiffs' trade-in to an unfunded contract. [*sic*] and failed to disclose the terms or existence of cross-collateral or guaranty agreements. Such concealment prevented Plaintiffs from understanding the identity of the party to whom payment obligations were owed, contrary to TILA's disclosure requirements. By structuring the transaction to obscure creditor status, Defendants deprived Plaintiffs of their statutory right to "meaningful disclosure of credit terms" under 15 U.S.C. §1601(a).

Docket No. 1, p. 9 (emphasis in original).

In their Motion to Dismiss, Defendants respond:

> Count I, which purports to assert a claim for violation of the Truth In Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq*., fails because: (a) Mr. Aguilar, as a non-party to the contract at issue, lacks standing; (b) the claim is barred by the statute of limitations; and (c) no violation of TILA is apparent on the face of the contract at issue.

Docket No. 36, p. 3 (citation modified). Defendants further explain:

> Count I of the Complaint purports to assert a claim under TILA, 15 U.S.C. § 1601, *et seq*. This claim fails because Mr. Aguilar lacks standing, and Plaintiffs did not bring their alleged TILA claim within the one-year statute of limitations prescribed under the TILA for the type of claim alleged. This alone is a sufficient basis for the Court to [deny] Plaintiffs' TILA claim. Moreover, this claim fails because the Dealer, not Ally, was the "creditor" under the TILA with respect to Ms. Aguilar's purchase transaction. Accordingly, Ally can only be liable to Ms. Aguilar under the TILA for violations that are apparent on the face of the RISC. Because the record does not evidence a TILA violation apparent on the face of the RISC, the Court should dismiss the purported TILA claim with prejudice.

*Id.* at 10 (citation modified).

In explaining that Andy M. Aguilar lacks standing to assert a TILA claim,

Defendants assert:

> TILA requires those who extend loans to "provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." *Marais v. Chase Home Fin. LLC*, 736 F.3d 711, 714 (6th Cir. 2013) (quoting *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412, 118 S. Ct. 1408, 140 L. Ed. 2d 566 (1998)). But to have constitutional standing, a plaintiff must have "suffered (1) an injury that is (2) 'fairly traceable to the defendant's allegedly unlawful conduct' and that is (3) 'likely to be redressed by the requested relief.'" *Prime Media, Inc. v. City of Brentwood*, 485 F. 3d 343, 349 (6th Cir. 2007) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). Based on this, numerous courts have held that non-borrowers lack standing to assert claims under TILA. *See, e.g., Britt v. Flagstar Bank*, 2011 U.S. Dist. LEXIS 150463, *9, 2011 WL 6941710 (E.D. Mich. Oct. 27, 2011) (A "spouse who was not a party to her partner's loan or mortgage lacks the ability to bring a RESPA or TILA claim."); *Correa v. BAC Home Loans Servicing LP*, 853 F. Supp. 2d 1203, 1208 (M.D. Fla. 2012) (holding that "[a] nonparty to the loan cannot bring an action for violations of TILA."); *Weiner v. Bank of King of Prussia*, 358 F. Supp. 684, 692 (E.D. Pa. 1973) ("[T]he Truth-in-Lending Act makes explicit that only a person to whom the duty of disclosure is owed can recover for breach of that duty. It is obvious that in order for a bank to be obligated to disclose credit terms to an individual, that individual must be doing business with the bank."); *Talley v. Deutsche Bank Trust Co.*, 2008 U.S. Dist. LEXIS 83148, *4, 2008 WL 4606302 (D.N.J. Oct. 15, 2008) (Only the party to whom the duty of disclosure is owed has standing to assert a claim under TILA).
>
> Here, Plaintiffs' TILA claim is based on the assertion that the RISC only lists Dealer as the creditor and fails to "identify the true creditor" in violation of the statute. (Complaint, p. 9). But the RISC was entered into by Ms. Aguilar only. *See*

> ECF No. 1-2, p.p. 3-5. Mr. Aguilar is not a party to the transaction. Consequently, Mr. Aguilar lacks standing to assert a claim under TILA, and his claims under the statue should be dismisses [*sic*] with prejudice.

*Id.* at 10-11 (citation modified).

Additionally, Defendants argue the TILA claim is time-barred:

> In addition to Mr. Aguilar lacking standing to bring claims under the statute, Plaintiffs' TILA claim should be dismissed because it is barred by the applicable statute of limitations. Section 1640(e) of the TILA prescribes the statute of limitations for TILA claims brought by private parties. Under this provision, any action under TILA must be brought within one year. *Derbabian v. Bank of Am., N.A.*, 587 Fed. Appx. 949, 955 (6th Cir. 2014). Specifically, the section provides that, with the exception of claims brought under certain TILA provisions not at issue in this case, "any action under this section may be brought . . . *within one year from the date of the occurrence of the violation.*" 15 U.S.C. § 1640(e) (emphasis added). Although the statute of limitations is an affirmative defense and "a plaintiff generally need not plead the lack of affirmative defenses to state a valid claim" the Court can dismiss the claim if "the allegations in the complaint affirmatively show that the claim is time-barred." *Cataldo v. U.S. Steel Corp.*, 676 F. 3d 542, 547 (6th Cir. 2012). When the allegations show that relief is barred by the applicable statute of limitations, a claim should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim). *Id.*; *see Dorta v. SpecialtyCare, Inc.*, 2024 WL 2060151, 2024 U.S. Dist. LEXIS 82188, *11-12, 2024 LX 111941 (M.D. Tenn. May 6, 2024) (granting a motion to dismiss a TILA claim as time barred). Here, Plaintiffs assert that the RISC failed to provide adequate disclosures. But Ms. Aguilar executed the RISC on May 13, 2022. *See* ECF No. 1-2, p. 5. Accordingly, the deadline for Ms. Aguilar to assert her claim was May 13, 2023. Because Plaintiffs did not file their Complaint until September 19, 2025 – more than two years after the deadline – the TILA claim is time barred, and the Court should dismiss Court I of the Complaint with prejudice.

*Id.* at 12 (citation modified).

Finally, beyond procedural defects, Defendants point to a lack of substantive merit to Plaintiffs' TILA claim:

> Ms. Aguilar's failure to bring her TILA claim within the prescribed statute of limitations period is fatal to her claim, and the Court need not conduct any further analysis to dismiss her claims. But even if the Court were look beyond the statute of limitations issue, dismissal is warranted because there is no evidence of a TILA violation for which Ally could be liable as the assignee of the RISC. To the contrary, the record demonstrates that the RISC between Ms. Aguilar and the Dealer contains all required disclosures.

TILA permits a party who has been injured by a violation of its provisions to bring an action against a creditor and the assignee of the creditor. 15 U.S.C. § 1640(a); 15 U.S.C. § 1641(a). Under TILA, "[t]he term "creditor" refers only to a person who *both* (1) regularly extends . . . consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of indebtedness . . . ." 15 U.S.C. § 1602(g) (emphasis added). But TILA limits assignee liability under § 1641(a) to TILA violations that are "apparent on the face of the disclosure statement." *Marais v. Chase Home Fin. LLC*, 736 F.3d 711, 715 (6th Cir. 2013) (quoting 15 U.S.C. § 1641(a)).

Accordingly, under circumstances where a dealer originates a credit sale transaction between the dealer and a consumer and then the dealer subsequently transfers the contract to a lender, the dealer is the creditor within the meaning of TILA. *See, e.g., Kinzel v. Southview Chevrolet Co.*, 892 F. Supp. 1211, 1216 (D. Minn. 1995) (granting summary judgment for several non-dealer defendants after reviewing the legislative history of the term "creditor" under the TILA and holding that, under the current definition, the dealer is the TILA creditor in dealer-originated credit sale transactions that are assigned to banks).

Here, Plaintiffs assert that Ally violated TILA because the RISC was not funded by Ally, and therefore the RISC failed to properly disclose the "creditor." (Complaint, ¶ 4). But contrary to these assertions, it is undisputed that Dealer assigned the RISC to Ally.

In her Arbitration Demand, Ms. Aguilar conceded that Ally provided financing for her purchase of the Vehicle, stating as follows: ". . . stemming from a vehicle loan for a 2018 Mercedes-Benz C Class issued through Respondent on or about May 13, 2022." (Exhibit 1, p.3, ¶¶5-6). This constitutes a binding judicial admission. *See Consol. Pipe & Supply, Co. v. Rowe Transfer, Inc.*, 2013 U.S. Dist. LEXIS 173950, *12, 2013 WL 6504744 (E.D. Tenn. Dec. 11, 2013) (quoting *Ahghazali v. Sec'y of Health and Human Servs.*, 867 F.2d 921, 927 (6th Cir. 1989) ("Statements in pleadings that acknowledge the truth of some matter alleged by an opposing party are judicial admissions binding on the party making them."). Consequently, Plaintiffs cannot now take a contrary position and deny that Dealer assigned the RISC to Ally.

Further, after hearing a full day of testimony from Ms. Aguilar and Ally's corporate representative, the Arbitrator specifically found that the RISC had been assigned to Ally and that Ms. Aguilar had breached her obligations to Ally under the agreement. (Exhibit 2, p.p. 1-3). The Court should not permit Plaintiffs to relitigate this issue.

The RISC clearly permits assignment, and Dealer assigned the RISC to Ally. Indeed, this is why Ms. Aguilar initiated the arbitration against Ally. Because Ally

is an assignee of the RISC and the Complaint does not identify any violations of TILA that are apparent on the face of the disclosure statement, the TILA claim asserted in Count I of the Complaint fails as a matter of law, and the Court should dismiss it with prejudice.

*Id.* at 13-15 (citation modified).

In their Response, Plaintiffs state:

Ally argues that Plaintiffs' TILA claim fails because (1) Ally was the creditor by assignment, and (2) the claim is time-barred. Both arguments fail at the pleading stage.

1. Creditor identity and assignment are disputed factual issues

TILA requires accurate disclosure of the true creditor. See 15 U.S.C. § 1602(g). Plaintiffs allege that no Ally entity funded the transaction, that no lawful assignment of the Retail Installment Sales Contract ("RISC") has been produced, and that Ally nevertheless held itself out as the creditor and attempted to enforce the obligation.

Whether Ally qualifies as a "creditor" under TILA depends on disputed facts regarding funding and assignment. Courts routinely hold that such questions cannot be resolved on a motion to dismiss. *See Cenatiempo v. Bank of Am., N.A.*, 333 F.3d 769, 773 (7th Cir. 2003) (creditor status is fact-dependent); *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 748 (6th Cir. 2014) (assignment must be proven, not assumed).

Ally's argument again asks the Court to assume assignment and creditor status, facts Plaintiffs expressly dispute. That is improper under Rule 12(b)(6).

2. TILA statute of limitations does not support dismissal

Ally's statute-of-limitations argument is premature and legally flawed.

While certain TILA damages claims carry a one-year limitations period, equitable tolling applies where the violation was not apparent and was concealed. *See Jones v. TransOhio Sav. Ass'n*, 747 F. 2d 1037, 1041–42 (6th Cir. 1984) (TILA limitations period subject to equitable tolling); *Mills v. EquiCredit Corp.*, 172 F. App'x 652, 656 (6th Cir. 2006).

Plaintiffs allege that Ally concealed the absence of funding and assignment while representing itself as the creditor. Those allegations are sufficient to invoke tolling at the pleading stage. Whether tolling applies is a fact-intensive inquiry inappropriate for resolution on a motion to dismiss. *See Buchanan v. Northland Group, Inc.*, 776 F.3d 393, 397 (6th Cir. 2015).

Moreover, Plaintiffs seek declaratory and injunctive relief, which is not barred by the one-year limitations period. *See* 15 U.S.C. § 1640(a); *Williams v. First Gov't Mortgage & Inv'rs Corp.*, 225 F.3d 738, 751 (D.C. Cir. 2000).

Conclusion as to Count I

Because creditor identity, concealment, and tolling are fact-dependent, Count I should not be dismissed.

Docket No. 39, p. 7-9 (citation modified).

In their Reply, Defendants reiterate:

Plaintiffs' claims for violation of the Truth in Lending Act ("TILA") fail because Mr. Aguilar is not a party to the Retail Installment Sales Contract ("RISC"), and thus, he lacks standing. *See, e.g.*, *Britt v. Flagstar Bank*, 2011 U.S. Dist. LEXIS 150463, *9, 2011 WL 6941710 E.D. Mich. Oct. 27, 2011). Further, the claim was asserted outside the statute of limitations and is therefore untimely. *Derbabian v. Bank of Am., N.A.*, 587 Fed. Appx. 949, 955 (6th Cir. 2014).

Moreover, Plaintiffs' assertion that Ally is not the "true creditor" cannot save the claim. Rather, it is clear that at the time of Ms. Aguilar's purchase of the Vehicle, Defendant Sonic Automotive Inc. ("Sonic") was the creditor. *See Kinzel v. Southview Chevrolet Co.*, 892 F. Supp. 1211, 1216 (D. Minn. 1995) (the dealer is the TILA creditor in dealer-originated credit sale transactions that are assigned to banks). As Ms. Aguilar conceded in her Arbitration Demand, the RISC was subsequently assigned to Ally. Because Plaintiffs have failed to identify any Violations of TILA apparent on the face of the RISC, Ally cannot be held liable under 15 U.S.C. § 1641(a).

Docket No. 43, p. 2.

As the Sixth Circuit has observed:

TILA requires those who extend loans to "provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." *Marais v. Chase Home Fin. LLC,* 736 F.3d 711, 714 (6th Cir.2013) (quoting *Beach v. Ocwen Fed. Bank,* 523 U.S. 410, 412, 118 S. Ct. 1408, 140 L.Ed.2d 566 (1998)). "[A]ny action under [TILA] may be brought ... within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). The limitations period for claims alleging violation of disclosure requirements begins running when the agreement is entered and the lender does not make the required disclosures. *See Wike v. Vertrue, Inc.,* 566 F. 3d 590, 593 (6th Cir.2009) (citing *Wachtel v. West,* 476 F.2d 1062, 1065–66 (6th Cir. 1973)); *see also Khadher,* 577 Fed. App'x at 479 (explaining that the "occurrence

of the violation" is the date of the loan agreement).

*Derbabian v. Bank of America, N.A.*, 587 F. App'x 949, 954-55 (6th Cir. 2014) (citation modified).

TILA defines "creditor" as: "only ... a person who both (1) regularly extends ... consumer credit ..., and (2) is the person to whom the debt arising from the consumer credit transaction is *initially payable on the face of the evidence of indebtedness* …." 15 U.S.C. § 1602(g) (emphasis added). Additionally,

> Federal courts have found that a spouse who was not a party to her partner's loan or mortgage lacks the ability to bring a RESPA or TILA claim. *See Takushi v. BAC Home Loans Servicing, LP,* 11–00189, 2011 WL 2610208, 2011 U.S. Dist. LEXIS 71531 (D. Hawai'i July 1, 2011) (surveying cases in which the court granted summary judgment on RESPA and TILA claims for lack of standing because the plaintiff was not a party to the mortgage); *Falkiner v. One West Bank, FSB,* 780 F.Supp.2d 460, (E.D.Va.2011) (holding that the obligor's wife, who did not sign the note that she was attempting to rescind under TILA, did not have rescission rights.); *Ferreira v. Mortgage Elec. Reg. Sys., Inc.,* 794 F.Supp.2d 297, 2011 WL 1842864, at *5 (D.Mass.2011) (discussing federal courts that found that a spouse who was the person to whom the credit was extended cannot bring a cause of action under TILA to rescind.).

*Britt v. Flagstar Bank, FSB*, No. 10-14463, 2011 U.S. Dist. LEXIS 150463, 2011 WL 6941710, at *4 (E.D. Mich. Oct. 27, 2011), *report and recommendation adopted sub nom. Britt v. Flagstar Bank*, No. 10-14463, 2012 WL 12804 (E.D. Mich. Jan. 4, 2012), *aff'd* (Oct. 17, 2012) (citation modified).

The Court agrees with Defendants that Mr. Aguilar was not a party to the RISC, and therefore lacks standing to bring a TILA claim regarding the RISC. *See* Docket No. 43, p. 2. Ms. Aguilar's claim would normally be barred by the statute of limitations: the RISC was signed on May 13, 2022, and the Complaint was filed on September 19, 2025, over two years after the statute of limitations passed. *See* Docket No. 1; Docket No. 1-2, p. 2. But Plaintiffs are correct that the Sixth Circuit has found that equitable tolling applies to the statute of limitations for some TILA claims. *See Jones v. TransOhio Sav. Ass'n*, 747 F. 2d 1037, 1043 (6th Cir. 1984). The Court's

inquiry moves to whether Ally Financial Inc. is the "creditor" for the purposes of the TILA, meaning it was listed "on the face of the evidence of [Plaintiffs'] indebtedness." *See* 15 U.S.C. § 1602(g). In this case, the evidence of indebtedness is the RISC, which lists "Mercedes-Benz of Nashville" as the party in contract with Plaintiffs. Docket No. 1-2, p. 5. This satisfies 15 U.S.C. § 1638(a)(1)'s required disclosure of "the identity of the creditor." Though Plaintiffs dispute the downstream assignment of the RISC, the Court sees no issue with the dealership's listing as the initially payable entity on the face of the document. As the Ally Defendants were not the creditor for the purposes of the initial contract, Plaintiffs have failed to state a TILA claim. *See* 15 U.S.C. § 1638.

**2. ECOA**

In Count II of the Complaint, Plaintiffs allege Defendants Ally Financial Inc. and Sonic Automotive violated the ECOA, 15 U.S.C. § 1691 *et seq.*, stating:

> Primary theory, Unlawful discouragement and steering away from outside credit. In May 2022, Plaintiff Andy M. Aguilar obtained a valid pre-approval from Capital One Auto Finance for the purchase of the vehicle (See Exhibit C). Defendants refused to honor this outside financing and instead discouraged plaintiffs from using Capital One by falsely claiming the approval was invalid or would not "work" for the transaction. Defendants then steered Plaintiffs into a Retail Installment Sales Contract ("RISC") that funneled them into Ally's captive financing pipeline. Such conduct constitutes unlawful discouragement of credit applicants in violation of *Regulation B, 12 C.F.R. §1002.4(b).*
>
> Alternative theories, Discriminatory treatment, and misrepresentation of credit terms. By suppressing the Capital One financing and coercing Plaintiffs into the Ally/Sonic scheme, Defendants denied Plaintiffs the opportunity to contract on fair and equal terms. Defendants misrepresented that extended warranty and GAP insurance were required to "quality" for financing, thereby distorting the credit transaction and unlawfully conditioning approval on predatory add-ons. This deprived Plaintiffs of their ECOA-protected right to fair and non-discriminatory access to credit alternatives.

Docket No. 1, p. 9-10.

In their Motion to Dismiss, the Ally Defendants respond that Plaintiffs' claim fails because

"Plaintiffs do not allege that they are members of a protected class or that they were denied credit based on such a classification." Docket No. 36, p. 3 (citation modified). Defendants further explain:

> Count II of the Complaint, which purports to assert claims under the ECOA, fails as a matter of law because Plaintiffs do not allege any of the necessary elements of such a claim.
>
> "The ECOA prohibits creditors from discriminating against any credit applicant 'with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex, or marital status.'" *Mays v. Buckeye Rural Elec. Co-op., Inc.*, 277 F.3d 873, 876 (6th Cir. 2002) (citing 15 U.S.C. § 1691(a)(1)). To state a claim for violations of ECOA, a plaintiff must establish the following elements: "(1) he is a member of a protected class; (2) he applied for and was qualified for a loan; (3) the loan application was rejected despite his or her qualifications; and (4) the lender continued to approve loans for applicants with qualifications similar to those of the plaintiff." *Hood v. Midwest Sav. Bank*, 95 F. App'x 768, 778 (6th Cir. April 8, 2004). Where a plaintiff fails to allege facts sufficient to establish these elements, an ECOA claim fails as a matter of law. *See Johnson v. Frankenberg*, 2024 U.S. Dist. LEXIS 148303, *13-14; 2024 WL 3843568 (M.D. Tenn. July 18, 2024) (adopted by 2024 U.S. Dist. LEXIS 153725, 2024 WL 3955447 (M.D. Tenn. Aug. 27, 2024) (Granting a motion to dismiss an ECOA claim where the plaintiff failed to allege sufficient facts to conclude that he is part of a protected class, that he applied for credit from the defendants, or that the defendants are creditor[s] bound by the ECOA.").
>
> Here, Plaintiffs allege that Ally: (a) steered them away from an outside source of credit; or alternatively, (b) engaged in unspecified "discriminatory treatment" and "misrepresentation of credit terms." (Complaint, p.p. 9-10). Like the plaintiff in *Johnson*, they fail to allege any facts to establish that they are members of a protected class. Moreover, Plaintiffs fail to allege that they were denied credit based on their classification. Indeed, it is undisputed that Ally provided financing to Ms. Aguilar for the purchase of the Vehicle. Because Plaintiffs have failed to allege any of the necessary elements of an ECOA claim, the Court should dismiss Count II of the Complaint with prejudice.

*Id.* at 15-16.

Plaintiffs respond:

> Ally argues that Plaintiffs fail to state an ECOA claim because Ally was not the creditor and because Plaintiffs allegedly fail to plead protected-class discrimination.

> This argument misreads the Complaint and improperly resolves disputed facts.
>
> Plaintiffs allege discriminatory credit practices arising from the structuring and enforcement of the transaction, including misrepresentation of creditor identity and denial of lawful credit terms. Whether Ally qualifies as a "creditor" under ECOA depends on the same disputed facts regarding funding and assignment. *See* 15 U.S.C. § 1691a(e); *Mays v. Buckeye Rural Elec. Coop., Inc.*, 277 F.3d 873, 876 (6th Cir. 2002).
>
> Conclusion as to Count II
>
> At the pleading stage, Plaintiffs need only plausibly allege discriminatory conduct in connection with a credit transaction. They have done so. Ally's attempt to litigate creditor status and factual defenses exceeds the scope of Rule 12(b)(6). Count II should not be dismissed.

Docket No. 39, p. 9 (citation modified).

In their Reply, Defendants respond:

> Plaintiffs' Equal Credit Opportunity Act ("ECOA") claim fails because Plaintiffs have not alleged that they are members of a protected class or that they were denied credit based on such a
> classification. Without such allegations their claim cannot succeed. *See Johnson v. Frankenberg*, 2024 U.S. Dist. LEXIS 148303, *13-14; 2024 WL 3843568 (M.D. Tenn. July 18, 2024). Contrary to Plaintiffs' assertions, merely alleging a purported misrepresentation of creditor identity (Response, p. 9), without more, is not sufficient to state a claim.

Docket No. 43, p. 2.

The ECOA deems it unlawful for:

> [A]ny creditor to discriminate against any applicant, with respect to any aspect of a credit transaction--
>
> **(1)** on the basis of race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to contract);
>
> **(2)** because all or part of the applicant's income derives from any public assistance program; or
>
> **(3)** because the applicant has in good faith exercised any right under the Consumer Credit Protection Act [15 USCS §§ 1601 *et seq.*].

15 U.S.C. § 1691(a).

A creditor under the ECOA is "any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit." 15 U.S.C. § 1691a(e). To survive a motion to dismiss, the Sixth Circuit has recognized:

> [T]o state a claim for violations of ECOA, a plaintiff must allege facts that plausibly suggest: (1) the plaintiff was a member of a protected class; (2) the plaintiff applied for credit from defendants; and (3) the plaintiff was denied credit on the basis of his or her protected class. Facts that might plausibly suggest that the denial of credit was because of or on the basis of an applicant's protected status may include: (1) that the applicant was qualified to receive credit and was denied credit despite being qualified; (2) facts demonstrating discriminatory animus or treatment by the defendant; or (3) that persons not within the protected class were granted extensions of credit by defendant.

*Wilson v. Atlanticus Servs. Corp.*, No. 19-11672, 2020 U.S. Dist. LEXIS 43116, 2020 WL 2393198, at *3 (E.D. Mich. Jan. 10, 2020), *citing Egbukichi v. Wells Fargo Bank, NA*, 184 F. Supp. 3d 971, 980 (D. Ore. 2016).

The Court agrees with Defendants that Plaintiffs have not plausibly alleged that they are members of a protected class, which fails the Sixth Circuit's test to survive a motion to dismiss. *Id.*

**3. TCPA**

In Count III of the Complaint, Plaintiffs allege Defendants Ally Financial Inc. and Ally Bank violated the TCPA, 47 U.S.C. § 227 *et seq.*, stating:

> Primary theory, §227(b) and §227(c): Unauthorized calls to registered Do Not Call numbers. Plaintiffs' phone numbers ending in 615 (Karolina) and 773 (Andy) were registered on the National Do Not Call Registry prior to the events at issue. Defendants placed repeated autodialed and/or prerecorded calls to both numbers in connection with alleged debt collection, absent valid prior express consent. Each unauthorized call constituted a violation of the TCPA, entitling Plaintiffs to statutory damages of $500 per call, trebled to $1,500 for willful or knowing violations (See Exhibit S).

> Alternative theories, Consent revocation and ongoing violations. Even if Defendants contend that consent was once given through a credit application or RISC, Plaintiffs expressly revoked such consent verbally (2022 phone calls) and in writing (October 25, 2022, portal upload, followed by certified mail notices). Defendants ignored these revocations and continued placing calls, including voicemails, through at least February 2024, in willful violation of 47 U.S.C. §227 and corresponding FCC regulations.

Docket No. 1, p. 10.

In their Motion to Dismiss, Defendants argue Plaintiffs have failed to state a claim for either § 227(b) or § 227(c) of the TCPA. For § 227(c):

> Plaintiffs first allege that Ally placed calls to their telephone numbers even though both numbers are listed on the National Do Not Call Registry. But this claim fails because the TCPA does not prohibit collection calls made to numbers on the Do Not Call Registry.
>
> "A plaintiff may bring a claim under § 227(c) if they have received 'more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed' in § 227(c)." *Chapman v. Nat'l Health Plans & Benefits Agency, LLC*, 619 F. Supp. 3d 788, 797 (E.D. Mich. 2022) (quoting 47 U.S.C. § 227(c)(5)). One such regulation concerns "the National Do Not Call Registry, which prohibits **'telephone solicitation[s]'** to a number that is on the National Do Not Call Registry." Id. (quoting 47 C.F.R. § 64.1200(c)(2), emphasis added). Under this regulation, "telephone solicitation" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person[.]" 47 C.F.R. § 64.1200(f)(14). But "[d]ebt collection calls are not telephone solicitation calls." *Hill v. Universal Fid., L.P.*, 2018 WL 2291421, 2018 U.S. Dist. LEXIS 84086, *23 (N.D. Ohio Apr. 26, 2018). *See also Shupe v. JPMorgan Chase Bank NA*, 2014 U.S. Dist. LEXIS 34467, * 5-6, 2014 WL 1117000 (D. Ariz., March 17, 2014), *affirmed*, 671 F. App'x at 419 (9th Cir. 2016) (Chase Banks's "calls to collect on a debt were exempt under the TCPA.").
>
> Here, Plaintiffs allege that the calls at issue were placed "in connection with alleged **debt collection**." (Complaint, p. 10, emphasis added). Because calls made for the purpose of debt collection cannot give rise to a claim for violation of this section of the statute, Plaintiffs' claims for violation of § 227(c) of the TCPA fail as a matter of law.

Docket No. 36, p. 16-17 (citation modified; emphasis in original).

For § 227(b):

Plaintiffs' claims under 227(b) of the TCPA are nothing more than a formulaic recitation of the elements without any factual support. Under *Twombly*, 550 U.S. at 555, this is not sufficient to state a claim as a matter of law.

Under § 227(b), "it is unlawful for any person to place a call 'using any automatic telephone dialing system or an artificial or prerecorded voice' to a cell phone number without obtaining the
''prior express consent of the called party.'" *Baisden v. Credit Adjustments, Inc.*, 813 F.3d 338, 342 (6th Cir. 2016) (citing 47 U.S.C. § 227(b)(1)(A)(iii)). To state a claim under this provision, "a plaintiff must establish that: (1) a call was placed to a cell or wireless phone (2) by the use of any automatic dialing system and/or leaving an artificial or prerecorded message, and (3) without prior consent of the recipient." *McDaniel v. Cent. Or. & Pac. R.R.*, 2019 U.S. Dist. LEXIS 199447, *6-7, 2019 WL 6050266 (M.D. Tenn. Nov. 15, 2019) [sic]

Here, the Complaint merely alleges that Ally "placed repeated autodialed and/or prerecorded calls to both numbers in connection with alleged debt collection, absent valid prior express consent." (Complaint, p. 10). As an initial matter, Plaintiffs fail to allege that either of the numbers at issue corresponds to a cellular telephone or that they are the subscribers. Further, the [*sic*] fail to plead adequate facts to show that the calls were placed with an automatic telephone
dialing system ("ATDS") or involved the use of artificial or prerecorded voice messages.

Under the Supreme Court's decision in *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1170 (2021), in order to qualify as an ATDS, "the equipment in question must use a random or sequential number generator" to place the calls. Emphasis added; *see also Barry v. Ally Financial, Inc.*, 2021 U.S. Dist. LEXIS 129573, *19, 2021 WL 2936636 (E.D. Mich. July 13, 2021) (dismissing claims asserted under §227(b) with prejudice where the Complaint failed to "plausibly plead that Defendant's dialing system used a random or sequential number generator to make calls to her, or even any facts that infer that the system had the capacity to make such calls"). Here,
Plaintiffs do not plead any facts to support a finding that the system used by Ally to place the calls at issue qualifies as an ATDS.

Similarly, Plaintiffs' mere assertion that Ally placed prerecorded calls is insufficient to state a claim. *See Reo v. Caribbean Cruise Line, Inc.*, 2016 U.S. Dist. LEXIS 35596, *9-11, 2016 WL 1109042 N.D. Ohio Mar. 18, 2016) (finding that the plaintiff provided insufficient detail to state a claim under §227(b) because "[t]here is no description of the content of the calls (or texts) and no information regarding the frequency of the calls or why they believed that an . . . 'artificial or prerecorded voice' was used such as a period of 'dead air' after answering a call or the inability to interrupt a message or to talk to a human being.").

Consequently, the Court should grant Ally's Motion and dismiss Count III of the

Complaint with prejudice.

Docket No. 36, p. 17-19 (citation modified).

In their Response, Plaintiffs counter that they have plausibly alleged violations of the TCPA. Regarding § 227(c):

> Ally argues that Plaintiffs' § 227(c) claim fails because debt collection calls are not "telephone solicitations." That argument assumes facts in Ally's favor and overlooks that whether calls qualify as exempt debt collection depends on their content and context, an inherently fact-intensive inquiry not resolvable on a motion to dismiss. *See Charvat v. NMP, LLC*, 656 F.3d 440, 446–47 (6th Cir. 2011).
>
> Plaintiffs allege that Ally placed repeated calls to telephone numbers listed on the National Do Not Call Registry in connection with alleged debt collection for a debt Ally lacked authority to collect. Where a defendant's authority to collect is itself disputed, the applicability of any regulatory exemption cannot be determined at the pleading stage. *See N.L. v. Credit One Bank, N.A.*, 960 F.3d 1164, 1171–72 (9th Cir. 2020). Dismissal of Plaintiffs' § 227(c) claim is therefore improper.

Docket No. 39, p. 10. Regarding § 227(b), Plaintiffs assert:

> Ally next argues that Plaintiffs failed to plead sufficient facts regarding the use of an ATDS or prerecorded voice. That argument misstates Rule 8 pleading requirements.
>
> To state a claim under § 227(b), Plaintiffs must plausibly allege that calls were made using an automatic dialing system or artificial or prerecorded voice without prior express consent. *Baisden v. Credit Adjustments, Inc.*, 813 F.3d 338, 342 (6th Cir. 2016). Plaintiffs allege that Ally placed repeated autodialed and/or prerecorded calls to their telephones without valid prior express consent. That is sufficient at the pleading stage.
>
> Ally's reliance on *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021), is misplaced. *Duguid* clarified the scope of liability but did not impose a heightened pleading standard or require plaintiffs to plead the internal mechanics of a defendant's dialing system prior to discovery. *See Manuel v. NRA Group LLC*, 2018 WL 5291938, at *6 (M.D. Tenn. Oct. 25, 2018).
>
> Whether Ally used an ATDS or prerecorded voice, and whether consent existed, are factual questions unsuitable for resolution under Rule 12(b)(6).
>
> Conclusion as to count III
>
> Because Plaintiffs have plausibly alleged repeated unauthorized automated and

> prerecorded calls, and because Ally's arguments depend on disputed facts and evidentiary proof, dismissal under Rule 12(b)(6) is improper. Count III should not be dismissed.

*Id.* at 10-11 (citation modified).

In Defendants' Reply, Defendants reiterate:

> Plaintiffs claim for violation of § 227(c) of the Telephone Consumer Protection Act ("TCPA") fails because Plaintiffs concede that the calls at issue were placed "in connection with alleged **debt collection**." (Complaint, p. 10, emphasis added). Collection calls are not "telephone solicitations" and, thus, cannot support a claim under § 227(c). *Hill v. Universal Fid., L.P.*, 2018 U.S. Dist. LEXIS 84086, *23 (N.D. Ohio Apr. 26, 2018). Similarly, Plaintiffs fail to state a claim for violation of §227(b) of the TCPA because their conclusory assertions that they received calls placed with an automatic telephone dialing system ("ATDS") or using prerecorded voice messages are not sufficient to state a claim. *See Reo v. Caribbean Cruise Line, Inc.*, 2016 U.S. Dist. LEXIS 35596, *9-11, 2016 WL 1109042 N.D. Ohio Mar. 18, 2016) (dismissing a claim under §227(b) because the plaintiff failed to plead information sufficient to show that the calls were placed with an ATDS or used prerecorded voice messages).

Docket No. 43, p. 2-3 (citation modified).

The TCPA prohibits the unlawful "use" of an ATDS to "make any call," including the use of an artificial or prerecorded voice in a call to a residential telephone line unless "exempted by a rule or order" of the Federal Communications Commission. *See* 47 U.S.C. § 227. As Judge Burke explains:

> The regulations pertaining to the National Do-Not-Call Registry ("NDNCR") are found at 47 C.F.R. § 64.1200(c)(2). The NDNCR applies to telephone solicitations. 47 C.F.R. § 64.1200(c). Under the regulation, "telephone solicitation" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person[.]" 47 C.F.R. § 64.1200(f)(14). Debt collection calls are not telephone solicitation calls. *See Shupe v. JPMorgan Chase Bank NA*, 2014 WL 1117000, 2014 U.S. Dist. LEXIS 34467, * 5–6 (D. Ariz. Mar. 17, 2014).

*Hill v. Universal Fid., L.P.*, No. 5:16-cv-02957, 2018 U.S. Dist. LEXIS 84086, 2018 WL 2291421, at *8 (N.D. Ohio Apr. 26, 2018), *report and recommendation adopted*, No. 5:16-CV-2957, 2018

U.S. Dist. LEXIS 84081, 2018 WL 2289877 (N.D. Ohio May 18, 2018) (citation modified).

Plaintiffs raise a question of whether Arbitrator Koblitz's Final Award to Ally Financial Inc. constituted a finding that the RISC had been assigned to Ally Financial Inc. from Mercedes-Benz of Nashville. Docket No. 39, p. 10. If the RISC had been assigned, Ally Financial Inc.'s calls were debt collection calls, and are exempt from § 227(c). If the RISC had not been assigned, Ally Financial Inc. had no debt assigned to collect from Plaintiffs. Defendants have countered that Plaintiffs' characterization of their calls as "in connection with alleged debt collection" disqualifies Plaintiffs' claims. *See* Docket No. 43, p. 2-3. But on a 12(b)(6) motion to dismiss, Plaintiffs' well-pleaded facts are taken as true, and Plaintiffs' allegations plausibly describe the Ally Defendants calling about debt that was not assigned to them. *See Twombly*, 550 U.S. at 547. At this stage of analysis, Plaintiffs' TCPA § 227(c) claim survives Defendants' Motion to Dismiss.

With regard to Plaintiffs' § 227(b) allegation, Plaintiffs are correct that *Facebook* did not establish a heightened pleading standard with regard to the use of an ATDS or prerecorded voice. *See* 529 U.S. 395, 409 (2021). But the Complaint must still allege plausible facts that explain why or how the Plaintiff knows that an ATDS was used, such as "a period of 'dead air' after answering a call or the inability to interrupt a message or to talk to a human being." *See Reo v. Caribbean Cruise Line, Inc.*, 2016 U.S. Dist. LEXIS 35596, *9-11, 2016 WL 1109042 N.D. Ohio Mar. 18, 2016. As Plaintiffs' allegations simply assert that such a system was used, they fail to state a TCPA claim under § 227(b).

**4. FDCPA**

In Count IV of their Complaint, Plaintiffs allege that all "Ally entities, and where applicable, Ally Servicing," violated the FDCPA, 15 U.S.C. § 1692 *et seq.*, stating:

> Primary theory -- §1692d and §1692c(c): Harassment and unlawful communications after cease-and-desist. Defendants placed repeated phone calls,

including autodialed and prerecorded messages, despite Plaintiffs' explicit verbal and written revocations of consent and certified-mail cease-and-desist notices. Such conduct had the natural consequence of harassing, oppressing, or abusing Plaintiffs, and further violated §1692c(c) by continuing communications after written demand to cease.

Alternative theory II -- §1692e and §1692f(6): False authority and unlawful repossession. Defendants misrepresented the legal status of the alleged debt by implying authority to enforce a contract never validly assigned, in violation of §1692e. They also threatened and attempted nonjudicial repossession without a present right to possession, in violation of §1692f(6).

Alternative theory II -- §1692a(6) false-name rule. Even if Defendants argue Ally is the original creditor, their use of the name "Ally Servicing" in debt-collection communications created the false impression that a separate third0party debt collector was involved. Courts hold that when a creditor uses a different name to collect debts, it may be deemed a "debt collector" under §1692a(6). By holding out "Ally Servicing" as distinct from Ally Financial or Ally Bank, Defendants misrepresented their identity and the character of the alleged debt, in violation of §1692e. *See Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 236-37 (2d Cir. 1998) (creditor using a different name to collect may be treated as a debt collector under the FDCPA).

Docket No. 1, p. 10-11.

In their Motion to Dismiss, Ally Defendants argue:

Count IV of the Complaint purports to assert a claim for violation of the FDCPA based on alleged improper collection activities, including contacting Plaintiffs regarding Ms. Aguilar's account and seeking to repossess the Vehicle. (Complaint, p.p. 10-11). But these claims fail as a matter of law because Ally is not a debt collector to whom the statute applies.

The FDCPA was created to protect consumers from unfair and deceptive debt collection practices. *See* 15 U.S.C. § 1692. But in order to recover under the statute, a plaintiff must meet three threshold requirements: (1) the plaintiff must be a "consumer"; (2) the defendant must be a "debt collector"; and (3) the defendant must have committed some act or omission in violation of the FDCPA. *See* 15 U.S.C. § 1692a(3), (6).

The FDCPA defines a "debt collector" as:

any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. 15 U.S.C.S. § 1692a(6). Under this definition,

> an entity has "to attempt to collect debts owed *another* before [it] can ever qualify as a debt collector." *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1724 (2017), emphasis supplied by the Supreme Court in *Henson*.
>
> In *Henson*, the Supreme Court specifically held that a third-party car loan and auto refinance company who purchases a debt from primary creditors is not a debt "debt collector" as defined by § 1692a(6). *Id.* at 1718, 1721-22. The Court concluded that the statutory definition simply does not apply to a third party who purchases a debt "for its own account," and who is not seeking to collect the debt owed to another party. *Id.* at 1721-22, 1724.
>
> Here, as discussed in detail above, Dealer assigned the RISC to Ally. Indeed, Ms. Aguilar conclusively conceded this in her Arbitration Demand. (Exhibit 1, p.3, ¶¶ 5-6). Accordingly, any attempt to collect on the account or to repossess the Vehicle were attempts to collect funds owed directly to Ally. Consequently, Ally is a creditor and not a debt collector to whom the FDCPA applies.
>
> On numerous occasions courts reviewing claims against Ally similar to those asserted by Plaintiffs have concluded that Ally is not a debt collector under the FDCPA. For example, in *Proctor v. Ally Fin., Inc.*, the District of Maryland found that Ally collects on its contracts for its own account. "Ally agreed to finance the purchase, and the Contract makes clear that the Dealer assigned its interest in the contract to Ally. ECF No. 17, Ex. B (Contract). Ally is therefore a creditor, not a debt collector, within the meaning of the FDCPA, since it is collecting debts on its own behalf rather than for others." *Proctor v. Ally Fin., Inc.*, No. PJM 18-2989, 2019 WL 3539929, 2019 U.S. Dist. LEXIS 129900, at *8 (D. Md. Aug. 2, 2019); *see also Sloan v. Ally Fin. Inc.*, No. GJH-18-1979, 2019 WL 224924, 2019 U.S. Dist. LEXIS 7523, at *4 (D. Md. Jan. 15, 2019) (dismissing a claim under the FDCPA "because Ally seeks to collect its own debt rather than a debt 'owed to another' and is acting as a creditor, not 'a person whose principal purpose is to collect debts'"); *Buckingham v. Ally Fin.*, No. 12-2985-SHM-tmp, 2013 WL 3884178, 2013 U.S. Dist. LEXIS 104372, at *12-13 (W.D. Tenn. June 25, 2013), adopted by, 2013 WL 3864820, 2013 U.S. Dist. LEXIS 103476, at *1 (W.D. Tenn. July 24, 2013) (finding the Complaint failed to allege that Ally is a debt collector and that "Ally, as a creditor, cannot be sued under the FDCPA").
>
> Because Ally is not a debt collector within the meaning of the statute, Plaintiffs' claim for violation of the FDCPA fails as a matter of law. Consequently, Count IV of the Complaint should be dismissed with prejudice.

Docket No. 36, p. 19-21 (citation modified).

Plaintiffs counter:

> Ally's FDCPA argument rests on a single disputed factual premise: that Ally was a creditor collecting its own debt. That premise is neither conceded nor established

and cannot be resolved under Rule 12(b)(6).

**1. *Henson* Does Not Apply Where Ownership Is Disputed**

Ally relies on *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718 (2017), to argue that it is exempt from the FDCPA as a creditor. But *Henson* applies only where debt ownership is undisputed. Here, it is not.

Plaintiffs allege that no Ally entity funded the transaction, no lawful assignment of the Retail Installment Sales Contract ("RISC") was produced, and Ally therefore lacked authority to collect or repossess. Where ownership and assignment are contested, courts routinely decline dismissal under *Henson*. *See Bridge v. Ocwen Fed. Bank*, 681 F.3d 355, 360–61 (6th Cir. 2012).

Ally's argument presupposes the very issue Plaintiffs challenge and therefore fails at the pleading stage.

**2. Section 1692f(6) Applies Regardless of Creditor Status**

Even if Ally were ultimately deemed a creditor, which Plaintiffs dispute, § 1692f(6) applies to any person, not only "debt collectors" under § 1692a(6). *Montgomery v. Huntington Bank*, 346 F.3d 693, 700–01 (6th Cir. 2003).

Section 1692f(6) prohibits taking or threatening nonjudicial action to dispossess property without a present right to possession. Plaintiffs allege that Ally pursued repossession without lawful assignment or authority. Those allegations independently state a claim under § 1692f(6). *See Todd v. Weltman, Weinberg & Reis Co.*, 434 F.3d 432, 439 (6th Cir. 2006).

**3. Alleged Arbitration "Admissions" Do Not Defeat the Claim**

Ally's reliance on alleged arbitration statements to establish creditor status does not alter the pleading analysis. At this stage, the Court must accept Plaintiffs' allegations as true, not Ally's characterizations of disputed facts. *See Iqbal*, 556 U.S. at 678.

**Conclusion as to count IV**

In sum, Plaintiffs plausibly allege that Ally attempted to collect and repossess without a present right to do so. At most, Ally raises factual disputes concerning ownership, assignment, and authority. Those disputes preclude dismissal under Rule 12(b)(6) and cannot support dismissal with prejudice. That is sufficient to state an FDCPA claim at the pleading stage. Count IV should not be dismissed.

Docket No. 39, p. 11-13.

Ally Defendants reply:

> Plaintiffs' Fair Debt Collection Practices Act ("FDCPA") claim fails because Ally is a creditor and not a "debt collector" to whom the statue applies. *See Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1721-22, 1724 (2017) (a lender who purchases an auto loan from the initial creditor is not a "debt collector" as under § 1692a(6 of the FDCPA).

Docket No. 43, p. 3.

Plaintiffs' allegations of Ally Financial Inc.'s status with regard to the RISC must amount to a plausible claim to survive a motion to dismiss. *See Twombly*, 550 U.S. at 547. Plaintiffs' own Complaint included the RISC, which on its face allows assignment. *See* Docket No. 1-2, p. 2. While it is plausible that such debt was assigned to Ally Financial Inc., especially given Plaintiffs' recognition that their vehicle loan "for a 2018 Mercedes-Benz C Class [was] issued through [Ally] on or about May 13, 2022," Plaintiffs allege that Arbitrator Hughes identified a legitimate issue with awarding Ally Financial Inc. or Ally Bank the vehicle. Docket No. 46, p. 3; *see* Docket No. 46-1, p. 4. There appears to be no documentation supporting an official transfer of the RISC from Mercedes-Benz of Nashville to an Ally entity. *See* Docket No. 46-1, p. 5. While subsequent Arbitrator Koblitz did not continue this line of inquiry, determining the plausibility of the FDCPA claim requires determination of the status of Ally Financial Inc. with regards to the RISC. It is unclear based on the factual allegations whether Ally Financial Inc. acted in its capacity as a debt collector under the definition in the Act, or an entity collecting their own debt, outside of the Act's purview. Docket No. 46-1, p. 5; *see* 15 U.S.C. § 1692a(6). Therefore, the Court recommends that Plaintiffs' FDCPA claim should survive Defendants' Motion to Dismiss.

**5. RICO**

In Count XIII of their Complaint, Plaintiffs "reserve" the right to allege Defendants Ally Financial and Sonic Automotive violated RICO, 18 U.S.C. § 1962. Plaintiffs state:

> Primary theory, Reservation of RICO claims upon discovery of predicate acts and racketeering pattern. Plaintiffs allege that Defendants' conduct may constitute violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1962, including mail fraud, wire fraud, and collection of unlawful debts. At present, Plaintiffs reserve the right to amend this Complaint to assert a RICO claim upon discovery confirming a "pattern of racketeering activity" as defined in 18 U.S.C. §1961(5).
>
> Alternative theories, Enterprise liability and conspiracy under §1962(c)-(d). Discovery is expected to reveal whether Ally, Sonic, and related entities operated as an "enterprise" engaging in repeated acts of fraudulent assignment, fabricated creditor status, and abusive collection practices affecting interstate commerce. Plaintiffs expressly reserve their right to plead direct RICO violations under §1962(c) and conspiracy liability under §1962(d) upon confirmation of such predicate acts.

Docket No. 1, p. 15-16.

In their Motion to Dismiss, Ally Defendants state this allegation "fails because Plaintiffs do not allege any of the necessary elements of a RICO claim." Docket No. 36, p. 5. Ally Defendants continue:

> The allegations set forth in Count XIII of the Complaint fail to state a claim against Ally for violation of RICO.
>
> The relevant portion of the RICO statute provides:
>
> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
>
> *Franklin Constr. Grp., LLC v. Shore*, 793 F. Supp. 3d 928, 942 (M.D. Tenn. Aug. 1, 2025) (citing 18 U.S.C. § 1962(c)). "As evident from the statutory language, a plaintiff must plead the following elements to state a RICO claim: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Id.* (quoting *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006)).
>
> To establish the "conduct" element of a RICO claim, a plaintiff must plead facts showing the defendant participated, "directly or indirectly, in the conduct of [the RICO] enterprise's affairs." *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 791-792 (6th Cir. 2012) (quoting 18 U.S.C. § 1962(c)). An "enterprise" within the meaning of RICO is "any individual, partnership, corporation, association, or other legal entity and any union or group of individuals associated in fact although

> not a legal entity." *Franklin Constr. Grp., LLC*, 793 F. Supp. 3d at 943. To establish a "pattern" of racketeering activity, a plaintiff must plead, at a minimum, two acts of racketeering activity within ten years of each other. *Id.* (citing 18 U.S.C. § 1961(5)). To establish "racketeering activity," plaintiff must establish each of the elements of one of predicate crimes outlined by 18 U.S.C. § 1961(1)(A) or (B). *Id.*
>
> Here, Plaintiffs seek to "reserve" the right to assert a RICO claim in the future. (Complaint, p.p. 15-16). They fail to allege the existence of an enterprise or to plead any facts capable of establishing a pattern of racketeering activity by any of the Defendants. Because Plaintiffs have not pleaded any of the necessary elements of a RICO claim, the Court should grant Ally's Motion and dismiss Count XIII of the Complaint with prejudice.

*Id.* at 33-34 (citation modified).

Plaintiffs respond:

> Ally's argument mischaracterizes Count XIII. Plaintiffs are not presently asserting a substantive RICO claim under 18 U.S.C. § 1962. Rather, Count XIII expressly reserves Plaintiffs' right to amend should discovery confirm the existence of predicate acts, enterprise conduct, and a pattern of racketeering activity.
>
> Federal pleading rules do not require plaintiffs to assert unripe claims or plead facts uniquely within defendants' control prior to discovery. Rule 15 expressly permits amendment when additional facts are learned, and courts routinely allow reservation of RICO claims where predicate acts and enterprise structure depend on information held by defendants. *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 499 (1985) (civil RICO intended to reach conduct revealed through discovery).
>
> Because Plaintiffs have not asserted an operative RICO cause of action, Ally's attack on the sufficiency of RICO elements is premature. There is no claim presently before the Court requiring dismissal on the merits.
>
> At most, the Court may treat Count XIII as a non-operative reservation, not a substantive claim. Dismissal with prejudice would be improper, as it would prematurely foreclose amendment before
> discovery and contravene Rule 15's liberal amendment standard. *See Brown v. Chapman*, 814 F.3d 447, 457 (6th Cir. 2016).
>
> Accordingly, to the extent the Court addresses Count XIII at all, it should do so without prejudice, preserving Plaintiffs' right to amend should discovery reveal actionable RICO conduct.

Docket No. 39, p. 22-23.

In reply, Ally Defendants reiterate:

> Count XIII of the Complaint purports to "reserve" a claim under the Racketeer Influenced and Corrupt Organizations Act. Plaintiffs' Response concedes that they are not currently asserting a claim under this statute. (Response, p.p. 22-23).

Docket No. 43, p. 5 n.3 (citation modified).

The Court agrees with Plaintiffs that they are not "presently asserting a substantive RICO claim," and since pleadings fail if they fail to state a claim, the count is dismissed. *See Twombly*, 550 U.S. at 547; *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." (internal quotations omitted)).

**6. Motion to Vacate Arbitration**

As Plaintiffs' TCPA § 227(c) and FDCPA claims survive the Ally Defendants' Motion to Dismiss, Federal Question Jurisdiction under 28 U.S.C. § 1331 confers jurisdiction upon the Court to consider the motions regarding the Arbitration Award. *See Ford*, 29 F.3d at 257.

In their Complaint, Plaintiffs allege that they instigated AAA arbitration with Ally Financial Inc. upon the direction of their prior legal counsel. Docket No. 1, ¶8. Following the issuance of the Interim Award in favor of Ally Financial Inc. by Arbitrator Hughes, Plaintiffs brought the present case, pointing to the raised but unanswered question of the RISC assignment from the dealership to Ally Financial Inc. See Docket No. 1, ¶4. Following Arbitrator Hughes' recusal, Plaintiffs assert (and Defendants do not dispute) that Arbitrator Koblitz appears to not have addressed this open question, instead opting to resolve the arbitration by issuing a Final Award in favor of Defendant Ally Financial Inc. *See* Docket No. 46, p. 3.

In Plaintiffs' "Motion to Vacate Arbitration Award Pursuant to 9 U.S.C. § 10," Plaintiffs move for the Court to vacate the Final Arbitration Award issued February 11, 2026, pursuant to

the FAA, 9 U.S.C. § 10(a)(4). Docket No. 46, p. 1. Plaintiffs argue, in part:

> Vacatur is required because the arbitrator issued an award in favor of an entity whose contractual authority was expressly disputed, formally reopened for adjudication, amended by Respondent, and never resolved in a written determination.
>
> This defect is structural and the issue before this Court is not the merits of the underlying dispute. It is whether the Final Award rests on an adjudicated contractual foundation. The record reflects: (a) The RISC identifies Mercedes-Benz of Nashville as Seller-Creditor [Doc.17-1 PageID #206]; (b) Respondent initiated arbitration as Ally Financial Inc; (c) During arbitration, Respondent asserted that a different entity "Ally Bank" was the proper party [Doc. 1-2 PageID #43] , [Doc. 33-1 PageID #377] and [Doc. 33-1 PageID #375]; (d) The original arbitrator ordered Respondent to amend its counterclaim (Exhibit B); (e) Respondent filed an Amended Counterclaim naming Ally Bank [Doc., 1-2 PageID# 36]; (f) No written determination resolved which entity possessed enforcement rights (Exhibit C); (g) The successor arbitrator issued a Final Award in favor of Ally Financial Inc., without addressing the amendment (Exhibit A).
>
> Meanwhile, in this Court; (a) "Ally" has asserted that the creditor for TILA purposes is Sonic A.K.A. Mercedes-Benz of Nashville [Doc 43 Page ID#: 528]. (b) Sonic, in turn, has disclaimed rights to the RISC [Doc. 29-1 Page ID# 298-299].
>
> Thus, across proceedings, three different entities have been positioned as "creditor"; (a) Sonic Dba Mercedes-Benz of Nashville (Seller-Creditor in the RISC and asserted in federal pleadings); (b) Ally Bank (identified as proper party in the Amended Counterclaim); (c) Ally Financial Inc. (recipient of the Final Award).
>
> The Final Award does not reconcile these positions and does not determine which entity, if any, acquired enforceable rights under the RISC or arbitration agreement. An arbitration award must draw its authority from the contract and from issues properly submitted and resolved. When the identity of the enforcing party is formally amended in the pleadings and left unresolved, an award reverting to a prior entity without adjudicating that amendment exceeds the scope of the submission under 9 U.S.C. § 10(a)(4).
>
> Confirmation would require the Court to assume resolution of a predicate issue that the arbitrator did not decide. The FAA does not authorize courts to supply missing determinations regarding contractual authority.

*Id.* at 1-2.

In tracing the procedural history of the arbitration, Plaintiffs describe:

> Plaintiff executed an alleged Retail Installment Sales Contract ("RISC") for the

purchase of a vehicle. The RISC identifies Mercedes-Benz of Nashville as the Seller-Creditor. The arbitration agreement is a separate addendum executed in connection with that transaction [Doc. 31-1 PageID# 316].

> The arbitration proceeding was initiated against Ally Financial Inc. During the course of the arbitration, Respondent later asserted that Ally Bank was the proper entity and filed an Amended Counterclaim identifying Ally Bank as such [Doc. 1-2 PageID #43], [Doc. 33-1 PageID #377] and [Doc. 33-1 PageID #375]. Respondent did not produce an executed assignment transferring the RISC to Ally Financial Inc. or to Ally Bank, nor did the tribunal issue a written ruling resolving which entity possessed contractual enforcement rights (Exhibit A & C).
>
> In response to those representations, the original arbitrator, L. Wearen Hughes, (a) ordered Respondent to amend its counterclaim to substitute Ally Bank and (b) ordered briefing and a hearing to determine which entity provided financing and which entity, if any, possessed enforcement rights under the RISC (Exhibit B). (c) The real-party-in-interest issue was therefore formally reopened and identified as requiring adjudication before final relief.
>
> Respondent filed an Amended Counterclaim identifying Ally Bank as the proper party. The scheduled hearing on entity authority did not occur. Arbitrator Hughes subsequently recused himself from the case. The successor arbitrator thereafter issued a Final Award on February 11, 2026.
>
> The Final Award does not resolve the substitution issue. It does not determine whether Ally Bank replaced Ally Financial Inc., whether a valid assignment occurred, or which entity possessed contractual enforcement rights. Instead, the Award grants $139,147.88 in favor of Ally Financial Inc., the original captioned Respondent who is not a party of the RISC nor an Arbitration agreement. The real-party-in-interest question was formally reopened and never adjudicated (Exhibit B).

*Id.* at 2-3 (emphasis in original).

In their Response to this Motion, the Ally Defendants argue:

> The Motion to Vacate should be denied because Ms. Aguilar has failed to meet her burden of showing that the arbitrator exceeded her authority in entering a Final Award in favor of AFI. Ms. Aguillar initiated the Arbitration against AFI, asserting claims arising out of a Retail Installment Sale Contract (the "RISC") to provide financing for the purchase of an automobile. She proceeded through a full evidentiary hearing at which it was determined that her claims were wholly without merit and that AFI is entitled to recover on its counterclaim for breach of contract. Ms. Aguilar refused to comply with the Interim Award, and, along with Plaintiff Andy Aguilar ("Mr. Aguilar"), initiated these proceedings in an attempt to circumvent the decision. Now that a Final Award has been entered in the

> Arbitration, Ms. Aguilar seeks to vacate the decision, asserting that the arbitrator lacked authority to enter a decision in favor of AFI. This is untrue. Although RISC was assigned to Ally Bank, the evidence shows that AFI was entitled to service and enforce the agreement on behalf of AFI. Indeed, Ms. Aguilar conceded this by bringing her claims against AFI. Consequently, the Arbitrator did not exceed her authority in entering a Final Award in favor of AFI. The Court should, therefore, enter an Order denying the Motion to Vacate, grant AFI's Motion to Confirm the Final Award, and enter judgment in favor of AFI pursuant to § 9 of the Federal Arbitration Act ("FAA").

Docket No. 48, p. 1-2 (citation modified).

Plaintiff argues the Final Award ought to be vacated pursuant to § 10(a)(4), which requires that the arbitrator (in this case, the arbitrator that issued the Final Award reviewable by this Court, Arbitrator Koblitz) "exceeded [her] powers" or "so imperfectly executed them" that the Final Award is invalid. 9 U.S.C. § 10(a)(4). This does not appear to have happened here. First, Plaintiffs admit they initiated the arbitration proceedings against Ally Financial Inc., which now places them in the awkward spot of arguing that Arbitrator Koblitz exceeded her powers by weighing the facts of the case presented to her by Plaintiffs, on Plaintiffs' initiative. *See* Docket No. 1, ¶8. Next, Plaintiffs filed the present Complaint only after the Interim Award was issued in arbitration, which gives the appearance of attempting to circumvent the process that they themselves initiated. *See* Docket No. 1-2, p. 65; Docket No. 1. More curious, as Defendants note, is the fact that Plaintiffs never contested the debtor status of Ally Financial Inc. during the arbitration proceedings until Arbitrator Hughes raised the issue. *See* Docket No. 48, p. 1. Plaintiffs then brought it to this Court. *Id.*

The arbitration process has already provided a forum for Plaintiffs to raise these grievances. *See* Docket No. 1-2, p. 65. Arbitrator Koblitz resumed arbitration following Arbitrator Hughes' recusal and decided to issue Ally Financial Inc. the Final Award. *See* Docket No. 46, p. 3. Since the Final Award does not reverse the previous findings of Arbitrator Hughes, and his original

findings appear to have reviewed the evidence available, the Court finds it inappropriate to undo the efforts of all parties involved in this arbitration. *See* Docket No. 48, p. 4. The Arbitrator is not required to explain her findings, so Plaintiffs' insistence that the issue of the assignment of the RISC remains open appears meritless: by awarding the Final Award to Ally Financial Inc., Arbitrator Koblitz did not determine that the issue precluded a resolution of the case. *See Dawahare*, 210 F.3d at 669. Based on the information provided by both parties in their motions, the Court should decline to vacate the Final Award.

In declining to vacate the Final Award, the Court makes ruling on Defendants' Motion to Confirm the Final Award unnecessary, as in declining to vacate the Court necessarily confirms the Final Award. *See Hale*, 571 F. Supp. 3d at 886–87. Defendants' Motion to Confirm should be **DENIED AS MOOT**. Id.

**7. Denial of Vacatur's Effect on Jurisdiction**

As the Court's denial of vacatur necessarily confirms the Arbitration Award, the question of Ally Financial Inc.'s debtor/creditor status which prevented Plaintiffs' federal claims from being dismissed has been resolved. The Final Award determined Plaintiffs had breached their obligations to Ally Financial Inc. under the RISC, and thus Ally Financial Inc. was not a debt collector for the purposes of Plaintiffs' TDCA and FDCPA claims, as it was only collecting the debt owed to it by Plaintiffs, not a debt owed to others. *See* Docket No. 46, p. 3. Plaintiffs' TDCA § 227(c) and FDCPA claims should be dismissed.

Because the Court recommends the dismissal of all federal law claims, the Court will no longer have Federal Question jurisdiction under 28 U.S.C. § 1331. As such, all state law claims in the Complaint lose Supplemental Jurisdiction under 28 U.S.C. § 1367, and should be dismissed for wont of jurisdiction in this Court.

**8. Motion to Stay Arbitration**

While this Court has jurisdiction to grant an administrative stay of ongoing litigation in favor of beginning arbitration proceedings, the Court has no jurisdiction to stay ongoing arbitration proceedings in favor of beginning litigation. Additionally, as a Final Award has now been awarded, this Motion is inapplicable, and should be **DENIED**.

**9. Sonic Automotive Inc.'s Motion to Dismiss**

Sonic Automotive Inc.'s Motion to Dismiss should be granted, and Plaintiffs denied leave to amend in the alternative. Regardless of the party to be potentially substituted for Sonic Automotive Inc., Plaintiffs' claims have been determined to be futile, and therefore amending the Complaint would have no merit.

## III. CONCLUSION

For the reasons stated above, the undersigned recommends Plaintiffs' Motion to Stay Arbitration Proceedings (Docket No. 33) and Motion to Vacate Arbitration Award (Docket No. 46) be **DENIED** and the Arbitration Award be confirmed, Ally Defendants' Motion to Dismiss (Docket No. 36) be **DENIED** and Motion to Confirm Final Arbitration Award (Docket No. 47) be **DENIED AS MOOT**, and Defendant Sonic Automotive Inc.'s Motion to Dismiss (Docket No. 38) be **GRANTED**.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See*

*Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**